McLEAN v. CHICAGO. ETC., RY. CO. See Cases Nos. 8,892 and 8,893.

McLEAN (DUBOIS v.). See Case No. 4,107.

---

## Case No. 8,881.

### McLEAN v. HAMILTON COUNTY.

[4 Wkly. Law Gaz. 1.]

Circuit Court, S. D. Ohio. June Term, 1859.

PARTIES—COUNTY COMMISSIONERS—RIGHT TO SUE AND BE SUED—DERIVED FROM STATE STATUTE— FEDERAL COURTS—PRACTICE — POWER TO REGULATE—CONSTRUCTION OF STATE LAWS.

1. By the provisions of the act to establish a board of county commissioners, passed March 12, 1853, and the act April 20, 1852, the county commissioners of Hamilton county are authorized not only to make contracts in regard to public buildings and other matters, but to sue and be sued in all matters which involve the exercise of their powers.

2. In both cases the right to sue and the liability to be sued arises from the law of the state: and this, under the 34th section of the act 1789 [1 Stat. 92], constitutes a "rule of decision" for the courts of the United States. The citizenship of the plaintiffs must be shown in states other than Ohio, and this gives jurisdiction.

3. The suit must be brought within the state; but this arises from the local character of the commissioners who are sued, and not from any expressed or inferable intention to prohibit suit being brought in the circuit court of the United States.

4. No state has the power to regulate the practice of the circuit court, yet even this is frequently done by an act of congress, adopting the state practice, or by the rules of the court.

5. A circuit court of the United States, while sitting in a state, "is a court of judicature within it." It administers the laws of the state and is bound by their provisions, the same as the local tribunals.

6. The position is unsustainable, that no suit can be maintained in this court against a legal association of individuals, within a state, who do not possess in every respect the technical qualities of a corporation.

[This was a suit by Washington McLean against the commissioners of Hamilton county, Ohio. Heard on demurrer to the bill.]

Geo. E. Pugh, S. Matthews, and N. C. McLean, for plaintiff.

H. Stanbery, E. A. Ferguson, and T. M. Key, for defendants.

McLEAN, Circuit Justice. It is alleged there is no jurisdiction in this case, as the defendants do not constitute, technically, a corporation. There is, at least, novelty in this position. The constitution provides that the judicial power of the United States shall extend to controversies between citizens of different states, and it is argued that persons, however associated under the authority of law, unless they are legally corporators, can have no standing in the federal courts. Having, in part, the functions of a corporation, so as to enable it to make contracts, to sue, and be sued, yet, if it fail in any part of its ideal creation, it is something less than a corporation, and can not sue or be sued in the courts of the United States. Is this position sustainable? As the right of the plaintiff to sue is unquestionable, he being a citizen of the state of Kentucky, we must look to the laws of Ohio to ascertain the rights and liabilities of the defendants. The seventh section of an act to establish a board of county commissioners passed March 12th, 1853, provides that the board of commissioners in the several counties of this state shall be capable of suing and being sued, pleading and being impleaded, in any court of judicature within this state; and by the act of April 20th, 1852, the board of commissioners of Hamilton and Cuyahoga counties, and their successors in office, were authorized to erect buildings provided for by law, either by contract or otherwise, as they might think the public interest might require; and by the second section of that act, the county commissioners may, at their discretion, require all persons sentenced to hard labor to be employed in the erection of county buildings, within the limits of the proper county.

The provisions of acts above cited, and others of the same class, authorize the county commissioners not only to make contracts in regard to public buildings and other matters, but to sue and be sued in all matters which involve the exercise of their powers. But it is objected that "this board is not a corporation, is not, in law, a person natural or artificial, and, therefore, not in any sense a citizen liable to federal jurisdiction." If the commissioners of a county, by their organization, lose their character of citizens, without acquiring that of corporators, in the opinion of the counsel, they can only be denominated as a quasi corporation. The former decisions of the supreme court, which required all the members of a corporation to be citizens of the state in which the suit was brought, practically withdrew from the federal tribunals almost all the great questions which arose on the construction of corporate powers, and denied, to a large portion of our citizens, all redress in the supreme court. This was seen and felt, at an early period, by the distinguished members of that court. And the reason on which this was done—the citizenship of the stockholders—was not satisfactory to Marshall or his associates; but they hesitated for some years to change the rule of decision. At length the rule was so modified as to make the situs of the corporation the place where jurisdiction should be exercised. This secured the full representation of all the corporate rights of the body, without reference to the citizenship of the particular stockholders. The concentrated interest of the body, existed where the business was done, and the agency which carried it on represented the stockholders, and was responsible for its management. This, in reason and law, was the body corporate which exercised the power, and was answerable to all concerned. The position is unsustainable that no suit can be maintained in this court against a legal association of individuals within a state, who do not possess, in every respect, the technical qualities of a corporation. But this will be hereafter considered. It is assumed that if the board of commissioners were a corporation, it is not amenable to the federal jurisdiction, because it is so constituted that it can only be sued in our domestic tribunals. And this, it is said, was clearly within the power of the state legislature. And it is said that the seventh section above cited, "that the board of commissioners in the several counties of this state shall be capable of sueing and being sued, pleading and being impleaded in any court of judicature, within this state," is "undoubtedly a limit to the right and liability of suit." With great respect it is suggested that the words as to sueing "in any court of judicature within this state" do not import a denial of jurisdiction to the circuit court of the United States. The state of Ohio, like all other states, legislates over its domestic concerns. Its laws have no binding force beyond the limits of the state. They are adapted in the terms used to its local policy and organization. A circuit court of the United States, while sitting in a state, "is a court of judicature within it." It administers the laws of the state, and is bound by their provisions, the same as the local tribunals. The jurisdiction of the circuit court is derived from the constitution and the acts of congress. And although no state has power to regulate the practice of the circuit court, yet even this is frequently done by an act of congress, adopting the state practice or by the rules of the court.

It is admitted that there are many provisions in the acts regulating the powers and duties of the county commissioners which are merely local, and refer to county admin-

istrations. But there are others of a different character, which relate to large contracts for the construction of public buildings and other matters, in which a general interest is felt. And it is the policy of the county to encourage a competition which shall reduce the public expenditure in this respect, to the smallest practical amount. For wise purposes, the powers of the commissioners are ample to enter into contracts of any amount, which shall be necessary to secure the objects expressed. The suit must be brought within the state, but this arises from the local character of the commissioners who are sued, and not from any expressed or inferable intention to prohibit suit being brought in the circuit court of the United States. Had such an intention been expressed by the legislature of the state, it could not have been carried into effect. The act of congress and the constitution secure to citizens of other states and of foreign countries the right to sue in the federal courts; and no power of a state can be so exercised as to defeat this right. If a state could so construct its own tribunals as to deny the right of suit to citizens of other states and foreign countries, it could at pleasure repudiate the federal powers. This has been attempted to be done by more than one state. By the first section of the act (February 27, 1846; Swan, St. p. 706) it is provided: "That any company or association of persons, formed for the purpose of carrying on any trade or business or for the purpose of holding any species of property within the state of Ohio, and not incorporated as such, may sue or be sued, in any of the courts in this state, by such usual or ordinary name as such company, partnership or association may have assumed to itself or be known by; and it shall not be necessary in such cases to set forth in the process and pleadings, or to prove at the trial, the names of the persons composing such company." Can any one doubt that a suit may be maintained against such an association under this law, and can it be supposed that the words, "suit may be brought in any of the courts of this state," are a limitation on the right to sue by any one living out of the state? It is of no importance whether the suit brought be against a corporation, technically so called, or an aggregate body made liable to be sued by a law of the state. The jurisdiction in the federal courts is unquestionable in either case.

The thirty-fourth section of the judiciary act of 1789 declares that "the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply." It is admitted that this section has no application to the process of the courts of the United States. Can anything be more explicit than the provision of the above section? It is not a practice act, but a rule of decision; and it applies as well to the association authorized to sue and be sued, by the act of 1846, above cited, as to the act establishing the board of county commissioners, and authorizing them to make contracts and to sue and be sued. In both cases the right to sue and the liability to be sued arises from the law of the state; and this constitutes a rule of decision for the courts of the United States. The citizenship of the plaintiffs must be shown in the states other than Ohio, and this gives jurisdiction. In Massingill v. Downs, 7 How. [48 U. S.] 767, 768, the court, in reference to the above section, say: "No statute is of more frequent application in the federal courts; and it has often been held that the settled construction of a state statute by its supreme court is considered as a part of the statute; and the statute as thus expounded is regarded as a rule of decision in the courts of the United States, where it applies—of this character is a statutory lien." In Wayman v. Southard, 10 Wheat. [23 U. S.] 25, speaking of the thirty-fourth section, Chief Justice Marshall says: "This section has never, so far as I recollected, received a construction in this court; but it has, we believe, been generally considered as furnishing a rule to guide the court in the formation of its judgment, not for carrying that judgment into execution. It is a rule of decision, and the proceedings after judgment are merely ministerial." And in Clark v. Smith, 13 Pet. [38 U. S.] 203, the court says: "The state legislatures certainly have no authority to prescribe the forms and modes of proceeding in the courts of the United States; but, having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as in the state courts." The same principle is in Wickliff v. Owings, 17 How. [58 U. S.] 44. Language could not be more explicit than that used in this act to give power to the defendants to make contracts, to sue, and a liability to be sued. This is the law of the state; and under the thirty-fourth section of the act of 1789, "it is a rule of decision for this court," and binding on the parties in this case. The right to sue by the plaintiff having attached to him as a citizen of Kentucky, there is no power in the state to defeat it. It is secured by the act of congress and the constitution. The defendants are citizens of the state, and the capacity to sue and be sued does not divest them of that character.

It is suggested that this is a claim for unliquidated damages, and that no suit can be brought on it until it be presented to the commissioners for allowance, and shall be rejected by them. The answer to this is

that it is a contract which was abandoned by the defendants. There is no pretense that there was a performance on their part, and the plaintiff could only seek by action a reparation in damages. Under the circumstances, therefore, it was not a case for adjustment as contemplated by the act. The case of Lyell v. Lapeer Co. [Case No. 8,618], involved an open account which should have been presented for adjustment. But the contract before us was not an account, but an entire contract, which had been repudiated by the defendants, and on which no account could be made out. Under the circumstances, nothing could have been done by the plaintiff but an offer to compromise, which he was not bound to propose.

Finally, the defendants insist, that the contract sought to be inforced is one which this board had no power to make. This objection follows, in order of time, the one made, that the claim under the law was not presented to the defendants for an allowance. But if it shall appear that the defendants had no power to make the contract declared on, no further answer will be required.

### The Contract.

"The undersigned, Washington McLean of the one part, and the commissioners of Hamilton county of the other part, hereby agree: (1) That the said commissioners of Hamilton county shall have permission to enter upon, and take possession of, land belonging to said McLean, lying in the valley of Deer creek, east of the southern end of the south approach of the Dayton Short-Line Railroad, and to quarry out of the same all the limestone therein. (2) In consideration whereof, the said commissioners agree to finish the said quarrying within the space of five years from this date, and at the end of that period, or sooner, if the quarrying shall be sooner done, to surrender possession of the said tract of land to the said McLean; and also agree within the time aforesaid, to grade the said land and level down the same, according to a plat of the said ground made by Gilbert, the surveyor, so that the same when graded, cut down and leveled, shall conform to the levels as indicated on the same plat." Oct. 31, 1853.

It is said that the gist of this suit is to recover damages for the non-performance of work by the defendants on the property of the plaintiffs; that he claims to have made such a contract with the defendants; that thereby the public has become bound to improve his land. And we agree with the defendants' counsel that this proposition, as stated, does not make a very favorable first impression. I have just read the contract. It is concise, and contains few, if any, surplus words. The locality of the stone-quarry is described, and it is agreed between the parties that the commissioners shall have permission to enter upon and take possession of land belonging to the plaintiff, and to quarry out of the same all the limestone therein. In consideration whereof the defendants agree to finish the quarrying in five years, or sooner, if the quarrying be done, and also to grade the land and level down the same according to the plat of Gilbert, the surveyor, so as to conform to the plat. Not knowing the circumstances under which this contract was made, I can see nothing on its face to impeach its fairness. In the first place, it is an entire contract. The property, it appears, belongs to the plaintiff. And the defendants agreed to quarry all the limestone in the land, and to level the ground as required by the plat of Gilbert. No one can fail to see the intent of the parties to this contract. I have rarely seen an agreement more concise, or in which more perspicuous terms were used. The stone was to be removed from the ground, and the land leveled, according to Gilbert's map. This comprises the whole contract. Under the second section of the act of 1852, the commissioners had power to employ convicts in the erection of county buildings, or other public works within the county. This appears to me to be a very proper employment for such persons. And in the first section of the same act the commissioners of Hamilton and Cuyahoga counties, and their successors in office, are empowered, in the erection of public buildings, as heretofore by any law provided for, to proceed with the same, either by contract or otherwise, as in their opinion the public interest may require. Here is a wide discretion allowed to the commissioners in the discharge of their important duties. The court certainly will not presume against an exercise of power by the defendants contrary to their own contract, in the face of the law of 1852, which authorized them to proceed in the erection of public buildings or other works, either "by contract or otherwise." Having under their control convict or other labor, and being in want of stone for the public buildings or other public works, it may be supposed that the commissioners deemed it expedient in the exercise of their discretion to rent a stone-quarry on the terms stated in the contract. The object of the contract was to procure stone, and as a consideration for this the defendants agreed to level the ground. No one can be misled in regard to such a contract, especially when it may be supposed convict labor was employed by the commissioners under the authority of law.

In conclusion I would remark that it never has been decided in the courts of Ohio that a suit may not be sustained against the county commissioners; on the contrary, throughout the reports of the state, there are numerous instances in which suits have been sustained, and in many of them the commissioners have been considered as a corporation. Reynolds v. Commissioners of Stark Co., 5 Ohio, 205–207; Williams v. First Presbyterian Soc., 1 Ohio St. 510; Carey v. Commissioners of Montgomery Co., 19 Ohio, 245.

Harding v. Trustees of New Haven Tp., 3 Ohio, 227, 228, 230, held trustees of township were a corporation. Commissioners of Brown Co. v. Butt, 2 Ohio, 353, 355; Commissioners of Gallia Co. v. Holcomb, 7 Ohio, 232; State v. Piatt, 15 Ohio, 23, 24; County Com'rs of Lucas Co. v. Hunt, 5 Ohio St. 488; Boalt v. Commissioners of Williams, Defiance and Paulding Counties, 18 Ohio, 13; Commissioners of Hamilton Co. v. Mighels, 7 Ohio St. 109; Palmer v. Cuyahoga Co. [Case No. 10,688]; Cook v. Hamilton Co. [Id. 3,-157]; Same Case [Id. 3,158]; Lyell v. Lapeer Co. [Id. 8,618].

The incidents of a corporation, Blackstone says, are five: 1. Perpetual succession. 2. To sue and be sued, implead and be impleaded, grant or receive, by its corporate name. 3. To purchase lands and hold them. 4. To have a common seal. 5. To make by-laws. The second and third incidents are consequential to the first,—that of perpetual succession. The board of commissioners have this under the law. The power to have and use a common seal need not be given in express terms. In fact, the incidents of a corporation result, as has been held, for perpetual succession. So that it would seem, if the technical qualities of a corporation be applied to the defendants, the suit against them is maintainable. The demurrer is overruled.